**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROY LEE WELLS, JR.,

Defendant-Appellant.

No.  99-6315
(D.C. No. CR-98-185-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**  *

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Defendant Roy Lee Wells, Jr. pleaded guilty to possession of pseudoephedrine with the intent to manufacture methamphetamine while he was

---

*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

an inmate at the Federal Correctional Institution at El Reno, Oklahoma.  He appeals only the sentence imposed.  We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

Wells' prosecution stemmed from an investigation into an alleged conspiracy to manufacture and distribute drugs within FCI El Reno, where he was serving a 480-month sentence on drug, firearms and career criminal convictions. The investigation targeted Wells and co-defendant Glen Brummett, a counselor on the facility's staff, and was conducted with the assistance of an inmate acting as a confidential informant, who taped conversations between himself and Wells.  The investigation led to a seven-count indictment against Wells and Brummett, and Wells pleaded guilty to count seven, possession of a List I controlled chemical (pseudoephedrine) with intent to manufacture methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2.  His conviction carried a base offense level of thirty-two.  The district court increased the base offense level two levels each for three enhancements--distributing a controlled substance within a prison,  *see* USSG § 2D1.1(b)(3); playing a leadership or managerial role in the offense,  *see id.* § 3B1.1(c); and obstructing justice,  *see id.* § 3C1.1.  With the resulting offense level of thirty-eight and a criminal history category of VI, the sentencing range was 360 months to life.  The district court

sentenced him, inter alia, to the statutory maximum of 240 months to be served consecutively to his existing sentence. [1]

On appeal, Wells challenges the three enhancements to his sentence. "We review the district court's legal interpretation and application of the sentencing guidelines de novo and review the court's factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir.), *cert. denied*, 527 U.S. 1029 (1999). [2]

Wells first challenges the enhancement for distribution of drugs in FCI El Reno. Section 2D1.1(b)(3) provides for a two-level increase in the base offense level for Well's drug conviction "[i]f the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility." The district court's determination that he fell within this guideline section is a factual finding we review for clear error. *See Henry*, 164 F.3d at 1310.

---

[1] Brummett also pleaded guilty to one count of the indictment, possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d)(1), and was sentenced, inter alia, to ninety-seven months' imprisonment. In a separate order and judgment, we have affirmed Brummett's sentence. *See United States v. Brummett*, No. 99-6279 (10th Cir. August ___, 2000).

[2] The 1998 version of the United States Sentencing Guidelines applies to this case.

The evidence adduced at the sentencing hearing showed that Wells told the confidential informant that he was processing raw materials and partially finished methamphetamine into finished methamphetamine inside the prison, and he boasted that "[t]hey could call this a dope house. I make all the dope around here. You would not believe it in prison, would you?" R. Vol. 2 at 17. [3] He also stated that

> [m]aking dope in prison is a mother 'F' word. Like me and Boby said, this is history, but we can't talk about it. We make history in this mother 'F' word. I was doing reactions here for a while. Once he brought that ammonia in, oh, my God.

*Id.* at 14. Brummett stated that he brought methamphetamine paste, which was not in usable form, into FCI El Reno on six occasions and received a finished product back from Wells on only two occasions, raising the inference that Wells distributed the remainder in the prison. The district court relied on this and other evidence to find that Wells distributed methamphetamine in FCI El Reno. While Wells is correct that there is no direct evidence that he distributed methamphetamine in the prison, we conclude there is sufficient circumstantial evidence to support the court's finding that he did.

---

[3]     This and other quotations of Wells' conversations with the confidential informant were read into the record at the sentencing hearing by FBI agent Robert Bornstein, who had investigated the case against Wells and Brummett. The record does not include the actual transcripts of the tape of Wells' conversations with the informant. Bornstein used the phrases "'F' word" and "'S' word" in reading the transcript into the record.

Wells next challenges the district court's sentencing enhancement under § 3B1.1(c) for his aggravating role in the offense, i.e., his role as "organizer, leader, manager, or supervisor of [the] criminal activity," *id.* We review the district court's decision to apply this enhancement for clear error. *See United States v. Anderson*, 189 F.3d 1201, 1211 (10th Cir. 1999). In determining whether this enhancement applies, the court should consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1, comment. (n.4). "In considering these factors, the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures." *Anderson*, 189 F.3d at 1211 (quotation omitted).

Wells contends that his role in the offense did not qualify him for this enhancement because, as an inmate, he could not control the actions of Brummett, who was the only other participant and a prison employee. He contends that he and Brummett played roles of equal importance and notes that Brummett recruited

Wells into the venture, they agreed to split any proceeds evenly, and Brummett attempted to manufacture methamphetamine several times at his home.

Other evidence supports the district court's finding, however. Wells gave Brummett the recipe for manufacturing methamphetamine, but retained control over the final process. Wells told the informant that "[t]hey bring old Daddy all the oil [methamphetamine paste or other unfinished methamphetamine] so I know just what is happening. See, they can't 'F' word me. They don't know. I have kept them dumb in two areas, and they are really dumb." R. Vol. 2 at 15-16. After Brummett had problems with the manufacturing process and came back to Wells for advice, Wells told the informant: "He is 'F' word up. But that's good, cause he don't try to, you know, be slick. They ain't got no permission out here to get rid of nothing. You don't get nothing to get rid of." *Id.* at 48. Wells also advised Brummett to obtain loans from his credit union to help explain the extra income he was getting from distribution of the methamphetamine. This evidence is sufficient to support the district court's finding that Wells played an aggravating role in the offense warranting the enhancement. *Cf. United States v. Tagore*, 158 F.3d 1124, 1131 (10th Cir. 1998) ("A defendant may receive an enhancement as an organizer for devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy.") (quotation omitted).

-6-

Finally, Wells contends that his conduct did not warrant the two-level enhancement for obstructing justice. USSG § 3C1.1 provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Additionally, a finding of obstruction of justice generally prevents a defendant from receiving a sentence reduction for acceptance of responsibility. *See id.* § 3E1.1, comment. (n.4). Again, this is a factual matter that we review for clear error. *See United States v. Hankins*, 127 F.3d 932, 934 (10th Cir. 1997).

The district court found Wells obstructed justice by threatening and attacking two other inmates from FCI El Reno who were going to be witnesses against him. Agent Bornstein testified that Brummett said Wells had told him that he intended to kill the "rats," i.e., the witnesses. An incident occurred when Wells, Brummett, and the two witnesses were all at the Oklahoma County Jail. The witnesses testified at the sentencing hearing that as they were moving from one cell to another, Wells came out of his cell, called one of the witnesses a "rat," and then attacked the other witness with a knife.

Wells contends that § 3C1.1 applies only where a defendant's actions were intended to influence a proceeding and that since he had already pleaded guilty, there was no proceeding to influence. He had not yet been sentenced, however,

-7-

and § 3C1.1 expressly applies to sentencing.  He also challenges the factual basis for the court's finding, contending that the evidence showed the witnesses attacked Wells and that their credibility was suspect.  Credibility determinations are the province of the district court, to which we owe deference, *see United States v. Farnsworth*, 92 F.3d 1001, 1011 (10th Cir. 1996), and we have no reason to question the credibility determination here.  We also conclude that the evidence was sufficient to support the court's finding that Wells attempted to obstruct justice by threatening and attacking the witnesses.

AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge